**FEDERAL EXPRESS CORPORATION, Plaintiff–Appellant,**

v.

**TENNESSEE PUBLIC SERVICE COMMISSION, et al., Defendants–Appellees.**

No. 90–5596.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 23, 1991.

Decided Feb. 14, 1991.

---

William R. Willis, Jr., Marian F. Harrison (argued), Willis & Knight, Nashville, Tenn., for plaintiff-appellant.

Henry M. Walker (argued), Tennessee Public Service Com'n, Nashville, for defendant-appellee.

Before KEITH and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff-appellant Federal Express Corporation appeals the judgment of the district court dismissing on grounds of abstention its action seeking a declaration that the Tennessee Motor Carrier Act, Tennessee Code Annotated § 65–15–101 *et seq.*, is expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1305, and impliedly preempted by the commerce clause, 738 F.Supp. 1140. For the reasons that follow, we affirm.

## I.

Federal Express is a recognized leader in the overnight delivery business. "Approximately 90 percent of all packages transported by Federal Express are sorted at its Superhub in Memphis, Tennessee, the corporation's principal place of business." *Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 693 F.Supp. 598, 600 (M.D.Tenn.1988), *rev'd without opinion*, 909 F.2d 1483 (6th Cir.1989) (table). "Of the more than 700,000 packages transported nightly, approximately 1000 have both an origin and destination in Tennessee." *Id.* "Federal Express estimates that it transports approximately 500 packages per night by motor vehicle solely within the state of Tennessee." *Id.*

On July 2, 1986, the Tennessee Public Service Commission (TPSC) directed Federal Express to show cause why it was not subject to the Tennessee Motor Carrier Act, Tenn.Code Ann. § 65–15–102. A hearing was held before an administrative law judge (ALJ) who ruled that Federal Express was a motor carrier under Tennessee law and was therefore required to apply for a certificate of convenience and necessity from the TPSC. The TPSC reviewed the ALJ's decision and following oral argument, the TPSC issued an order on June 9, 1987, ordering Federal Express to apply for a certificate of convenience and necessity to operate as an intrastate motor carrier. "The TPSC gave Federal Express 30 days to comply with its order, later extending that deadline to August 25, 1987." *Federal Express*, 693 F.Supp. at 601.

On July 9, 1987, Federal Express filed with the Tennessee Court of Appeals a petition for review of the TPSC's order and an application for an immediate stay of the order. On August 6, 1987, the Tennessee Court of Appeals denied the application for a stay of the TPSC's order. In its one-page order, the court stated that the application for a stay was denied "on condition that compliance with said order of the Public Service Commission will not prejudice the prosecution of the present proceeding for review of said order." J.A. at 653.

On August 7, 1987, Federal Express filed the present action in the district court seeking declaratory and injunctive relief against the TPSC.[1] Federal Express argued that the Tennessee Motor Carrier Act was expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1305, and impliedly preempted by the commerce clause. Federal Express filed a motion for a temporary restraining order which the district court granted on August 10, 1987. The district court stated in its order that there was a substantial risk of irreparable injury to Federal Express "because submission to the jurisdiction of the Public Service Commission by filing an application may render moot the plaintiff's constitutional and federal statutory claims, and unduly interfere with and harm the

---

1. "Purolator Courier, a competitor with Federal Express that has complied with the Tennessee Motor Carrier Act, was permitted to intervene as a defendant." *Federal Express*, 693 F.Supp. at 601.

plaintiff's alleged integrated transportation system developed under federal authorization." J.A. at 135–36.

On September 9, 1987, prior to the district court's hearing arguments on the motion for a preliminary injunction, Federal Express filed a motion to voluntarily dismiss its petition for review in the Tennessee Court of Appeals, which the court granted on September 11, 1987. Pursuant to a motion by the TPSC, the district court consolidated the hearing on the motion for a preliminary injunction with a bench trial on the merits, and the consolidated proceeding was conducted on September 11 and 12, 1987.

On June 16, 1988, the district court issued an opinion and order dismissing the case for lack of federal subject matter jurisdiction. *See Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 693 F.Supp. 598 (M.D.Tenn.1988). The TPSC and intervenor Purolator Courier filed a motion for reconsideration, arguing that the court had jurisdiction pursuant to *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983), but that the court should abstain from a decision on the merits. The court denied the motion and adhered to its decision dismissing the action for lack of jurisdiction.

Federal Express appealed the dismissal of its action and a panel of this court initially affirmed the judgment of the district court. *Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 878 F.2d 381 (6th Cir.1989) (unpublished opinion). However, Federal Express filed a petition for rehearing en banc, and the panel amended its original opinion and reversed the judgment of the district court. *Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 909 F.2d 1483 (6th Cir.1989) (unpublished order). The panel remanded the case for further proceedings "including consideration of the question of abstention in view of this court's opinion in" *CSXT, Inc. v. Pitz*, 883 F.2d 468 (6th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990).

On remand, the parties briefed the abstention issue, and following a hearing, the district court entered an order on April 23, 1990, dismissing the action on the basis of the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Using the three-step analysis for *Younger* abstention, the court first applied the day-of-filing rule to conclude that Federal Express' petition for review in the Tennessee Court of Appeals constituted an ongoing state judicial proceeding. Second, the court held that Tennessee has an important state interest in regulating the intrastate trucking industry. Third, the court concluded that Federal Express had an adequate opportunity to raise its constitutional concerns in the state proceedings. The court also held that the TPSC had not waived the abstention argument. Accordingly, the district court dismissed the case and dissolved the injunction against the TPSC. This timely appeal followed.

The principal issue on appeal is whether the district court erred by applying the *Younger* abstention doctrine.

## II.

### A. Waiver

Before reviewing the district court's application of the *Younger* abstention doctrine, we must address Federal Express' contention that the TPSC has waived the abstention argument. Federal Express argues that the TPSC waived any abstention argument because it did not plead abstention in its answer, it did not file a motion for abstention, it urged the district court to hold a hearing on the merits of the case, and at the hearing, counsel for TPSC stated that abstention was no longer an issue in the case since the state court appeal had been dismissed. Federal Express asserts that the TPSC raised the *Younger* abstention argument for the first time two months after the bench trial when the district court asked the parties to brief the issue of res judicata. Thus, Federal Express contends that the TPSC waived the abstention argument by not actively pursuing the issue. *See City of Paducah v. Investment Entertainment*, 791 F.2d 463,

471 (6th Cir.) (Wellford, J., concurring), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 290 (1986).[2]

*Younger* abstention is "designed to allow the State an opportunity to 'set its own house in order' when the federal issue is already before a state tribunal." *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 479–80, 97 S.Ct. 1898, 1903–04, 52 L.Ed.2d 513 (1977). "If the State voluntarily chooses to submit to a federal forum, principals of comity do not demand that the federal court force the case back into the State's own system." Id. at 480, 97 S.Ct. at 1904. "[F]ailure to raise abstention could arguably amount to waiver of its application...." *Hughes v. Lipscher*, 906 F.2d 961, 964 (3d Cir.1990). However, in each case where the Supreme Court has found waiver of the abstention argument, "the State expressly urged [the] Court or the District Court to proceed to an adjudication of the constitutional merits." *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986).

■ In the present case, the abstention issue was first raised by the district court during a status conference on August 20, 1987. Although the TPSC did not plead abstention in its answer, Federal Express has cited no case requiring abstention to be raised in the pleadings. Indeed, the Supreme Court has indicated that "abstention may be raised by the court *sua sponte*." *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); *see also Louisiana Power & Light v. Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

■ After the district court raised the abstention issue, the TPSC filed a supplemental trial brief on September 2, 1987, arguing for abstention. However, in its brief, the TPSC argued for *Burford*-type[3] abstention rather than *Younger* abstention.

At the outset of the consolidated hearing and trial before the district court on September 11–12, 1987, the district judge directed the parties to address the abstention issue. The TPSC urged the district court to abstain, arguing that abstention is appropriate where "there is an ongoing State proceeding where the Federal plaintiff has a chance to raise his constitutional issue...." J.A. at 366. The TPSC cited *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), a case applying *Younger* abstention, to support its argument. Counsel for Federal Express informed the court that Federal Express had moved to dismiss its state court appeal on September 9, 1987, and counsel argued that the court should not abstain from hearing the case because there was no pending state action. Counsel for Federal Express argued that there was no basis for abstention under *Burford, Pullman*, or *Younger*. The district judge postponed consideration of the abstention issue and proceeded with the evidentiary hearing.

After receiving evidence and testimony on the merits, the court heard arguments from the parties on September 12, 1987, during which counsel for TPSC conceded that abstention was no longer an issue in the case because there was no pending state court action. However, counsel for intervenor Purolator Courier argued that under the *Younger* doctrine the abstention issue remained alive until the Tennessee Court of Appeals acted on Federal Express' motion to dismiss its appeal. The court invited the parties to submit supplemental briefs, and on November 12, 1987, the TPSC filed a supplemental brief retracting counsel's concession at the hearing that abstention was no longer an issue in the case. The TPSC stated that further research had revealed that *Younger* abstention, rather than the *Burford*-type, was

---

**2.** Federal Express' reliance on Judge Wellford's concurring opinion in *City of Paducah* is misplaced because in that case Judge Wellford concluded that the abstention issue had been abandoned on appeal, not waived by failure to raise it in the district court. Moreover, a concurring opinion has no binding authority.

**3.** *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention to avoid conflict with a state's administration of its own affairs.)

applicable to this case, and that the abstention issue was not mooted by Federal Express' dismissal of its state court appeal.

Our review of the proceedings in the district court reveals that the TPSC did not waive the abstention argument. As noted earlier, the TPSC was not required to raise abstention in the pleadings. When the district court raised the issue sua sponte, the TPSC argued for abstention. With the exception of the concession made by the TPSC at the hearing on September 12, 1987, which was retracted by its supplemental brief, the TPSC has persistently argued for abstention. Moreover, we view the TPSC's motion to consolidate the preliminary injunction hearing with a trial on the merits as a means of avoiding duplicative proceedings rather than a request for the court to reach the merits of the constitutional issue. Furthermore, it should be noted that on October 6, 1989, this court remanded this case to the district court for further proceedings including consideration of the question of abstention. Accordingly, we conclude that the TPSC did not waive the abstention argument.

## B. Abstention

◼ We conduct a *de novo* review of a district court's abstention decision. *Litteral v. Bach*, 869 F.2d 297, 298 (6th Cir.1989) (per curiam); *Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir.1985). Generally, *Younger* abstention is appropriate only where a court can answer the following three questions in the affirmative:

> *[F]irst,* do [the relevant state proceedings] ... constitute an ongoing state judicial proceeding; *second,* do the proceedings implicate important state interests; and *third,* is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Before applying the three-step analysis in the present case, we must address Federal Express' argument that abstention is inappropriate because Congress has preempted the regulation of air carriers by the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1305.

In *CSXT, Inc. v. Pitz*, 883 F.2d 468, 471 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990), we faced the question of whether "the fact that this case raises preemption rather than other types of constitutional issues require[s] us to modify the classic abstention analysis?" We held that there was no "reason to analyze abstention cases involving a preemption claim differently than other abstention cases." *Id.* at 473. We concluded that when confronted with a preemption claim, a court need only ask two questions:

> whether the state court has concurrent judicial jurisdiction to decide the preemption question, and, if the answer to that question is "Yes," whether a federal court should abstain in favor of ongoing state proceedings originating in the state regulatory agency.

*Id.* at 473–74.

Federal Express attempts to distinguish *CSXT* by arguing that the preemption language in the Airline Deregulation Act, 49 U.S.C.App. § 1305, "absolutely prohibits economic regulation by state agencies of the activities of a certificated air carrier." Appellant's Brief at 20. The statutory language relied on by Federal Express states:

> Except as provided in paragraph (2) of this subsection, no State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.App. § 1305(a)(1). The key phrase is "relating to rates, routes, or services of an air carrier." *Id.* Federal Express relies on three recent decisions holding that state regulation of an air carrier's rates, routes, or services was preempted by section 1305(a). *See Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir.) (state regulation regarding advertising of airline fares preempted), *cert. denied,* —— U.S. ——, 111 S.Ct. 307, 308, 112 L.Ed.2d

261 (1990); *Illinois Corporate Travel v. American Airlines*, 889 F.2d 751 (7th Cir. 1989) (same), *cert. denied*, —— U.S. ——, 110 S.Ct. 1948, 109 L.Ed.2d 311 (1990); *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157 (1st Cir. 1989) (state scheme to impose landing fee preempted). In each case, the court construed the "relating to" language in section 1305(a)(1) broadly to find state action preempted.

In *Mattox* the court observed:

An examination of the preemption language in § 1305(a)(1) and its legislative history leads to the conclusion that Congress did intend to preempt so completely the particular area of state laws "relating to rates, routes, or services" as to preclude state court actions. Congress preempted this area to maintain uniformity and to avoid the confusion and burdens that would result if interstate and international airlines were required to respond to standards of individual states. We agree with the First Circuit that Congress "did not intend to leave a vacuum to be filled by the Balkanizing forces of state and local regulation." *New England Legal Foundation*, 883 F.2d at 173. Congress made this clear by including the express preemption provision in the Deregulation Act.

*Mattox*, 897 F.2d at 787. Federal Express contends that its intrastate trucking system is "related to" its services as an air carrier, and, accordingly, section 1305 preempts the TPSC's regulation of its trucking system.[4]

Federal Express argues that since preemption under section 1305 is clear, the district court erred by abstaining from ruling on the merits. Federal Express attempts to distinguish *CSXT* by arguing that "the nature of the regulation in *CSXT* was so intertwined between state and federal governments that there was no clear

argument that tensions cut in favor of federal rather than state action." Appellant's Brief at 19. Finally, Federal Express asserts that "prosecution of the state proceedings, particularly in the absence of a stay pending full appellate review 'threatens impairment of federal rights,' *CSXT*, 883 F.2d at 475, and begins the Balkanizing process of piecemeal regulation which Congress feared and sought to prevent through the enactment of § 1305(a)." Appellant's Brief at 24.

■ We reject Federal Express' argument against abstention on the basis of federal preemption.[5] In our view, Federal Express has failed to distinguish our ruling in *CSXT*. In *CSXT*, we held that the presence of a preemption issue would not modify the classic abstention analysis so long as the state court has concurrent judicial jurisdiction to decide the preemption question. "State courts normally have concurrent jurisdiction of federal issues unless such jurisdiction is withdrawn by federal statute." *CSXT*, 883 F.2d at 472. Section 1305 does not purport to restrict the *jurisdiction* of state courts, and Federal Express has not shown that federal courts have exclusive jurisdiction to resolve preemption claims under the Airline Deregulation Act. Therefore, we hold that the Tennessee Court of Appeals had concurrent jurisdiction to address the preemption issue.

■ Before applying the three-part *Younger* analysis, we briefly address the implications of the Supreme Court's decision in *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368–70, 109 S.Ct. 2506, 2518–19, 105 L.Ed.2d 298 (1989), in which the Court held that while the *Younger* abstention doctrine may be applicable to administrative proceedings which are judicial in nature, it does not apply to administrative proceed-

---

4. The only court to address this specific issue reached the opposite conclusion. In *Federal Express Corp. v. California Public Util. Comm'n*, 716 F.Supp. 1299, 1302–03 (N.D.Cal.1989), the court held that section 1305 did not preempt state regulation of Federal Express' intrastate trucking operation in California. This case is presently on appeal to the Ninth Circuit.

5. The TPSC asserts that Federal Express did not raise this preemption argument in the proceedings before the district court on remand. However, we conclude that the preemption argument was adequately presented to the district court and we address the merits of the issue.

ings which are legislative or executive in nature. In *New Orleans Public Serv., Inc.*, the Supreme Court explained that a proceeding is judicial in nature when it "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." 109 S.Ct. at 2519 (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)). In the present case, the district court concluded that the administrative proceedings were judicial rather than legislative, and Federal Express has not challenged this determination on appeal. Although the issue is not contested, we conclude that the district court properly determined that the administrative proceedings were judicial in nature. *See Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 639–40 (6th Cir. 1990). Accordingly, the three-part *Younger* analysis is applicable to this case.

The first inquiry under the *Younger* analysis is whether the state proceedings constitute an ongoing state judicial proceeding. The district court applied the day-of-filing rule to conclude that the underlying state proceedings were ongoing. Federal Express contends that there was no ongoing state proceeding which it sought to enjoin. Federal Express argues, "Deference to a state proceeding is not due when the 'administrative proceedings have ended,' and where 'no state trial has taken place and no injunction against a pending state proceeding is sought.' " Appellant's Brief at 29 (quoting *Thomas v. Texas State Bd. of Medical Examiners*, 807 F.2d 453, 456 (5th Cir.1987)). Federal Express also cites *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609 n. 21, 95 S.Ct. 1200, 1211 n. 21, 43 L.Ed.2d 482 (1975), for the proposition that a party "aggrieved by a state administrative proceeding ... may choose to seek judicial relief for his constitutional claims in a federal court and need not exhaust his state judicial remedies." Appellant's Brief at 27. Federal Express asserts that its decision to dismiss its appeal is no different than a choice not to appeal.

■ In *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir.1986), we held "that

the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed." Under this rule, if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied. *See Beltran v. California*, 871 F.2d 777, 782 (9th Cir.1988). In the present case, state proceedings were ongoing because Federal Express' petition for review in the Tennessee Court of Appeals was pending on the date it filed the present action. Federal Express' reliance on *Thomas* is misplaced because in that case, the plaintiff dismissed his state suit before filing the federal action. *Thomas*, 807 F.2d at 457. Therefore, under the day-of-filing rule, Federal Express' subsequent dismissal of its state court action did not affect the abstention analysis. Federal Express' reliance on the footnote in *Huffman* is misplaced because the Court stated that in those cases where exhaustion had not been required, the state judicial process had not been initiated. *Huffman*, 420 U.S. at 609 n. 21, 95 S.Ct. at 1211 n. 21. To the contrary, in the present case, Federal Express had initiated state judicial proceedings, and we hold that the state court proceedings were "ongoing" for purposes of *Younger* analysis.

The second inquiry under the *Younger* analysis is whether the state proceedings implicate important state interests. The district court held that this element of *Younger* was satisfied because Tennessee has an important interest in regulating intrastate trucking. Federal Express does not challenge the district court's ruling on this point. Accordingly, the second prong of the three-part test is satisfied.

■ The final inquiry is whether there was an adequate opportunity in the state proceedings to raise constitutional issues. The district court concluded that this element was satisfied because Federal Express' constitutional claims could have been raised in the pending state proceedings. Federal Express argues that it did not have an adequate opportunity to protect its federal statutory and constitutional claims because the state court refused to grant a

stay of the licensing process. Federal Express contends that without a stay it would have to file an application for a certificate of public convenience and necessity with the TPSC, and it asserts that voluntary submission to the TPSC's jurisdiction would threaten to moot its federal constitutional and statutory claims.

Federal Express' argument misconceives the nature of the inquiry. The "pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Moore v. Sims*, 442 U.S. 415, 430, 99 S.Ct. 2371, 2381, 60 L.Ed.2d 994 (1979). "[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987) (quoting *Moore*, 442 U.S. at 432, 99 S.Ct. at 2382). "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15, 107 S.Ct. at 1528. In our view, Federal Express' assertion that its federal claims may be rendered moot without a stay fails to satisfy its burden of showing that state procedural law barred presentation of its claims.[6]

In *Watts v. Burkhart*, 854 F.2d 839, 847–48 (6th Cir.1988), we held that judicial review under Tennessee's Uniform Administrative Procedures Act satisfies the third element of the *Younger* analysis because it provides sufficient opportunity to litigate constitutional claims. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 629, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512 (1986) ("[I]t is sufficient ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding."). On the basis of our ruling in *Watts*, and in the absence of contrary authority from Federal Express, we hold that Federal Express had an adequate opportunity to litigate the consti-

tutional issues in the state court. Accordingly, all three elements of the *Younger* analysis are satisfied, and we hold that the district court did not err by abstaining from reaching the merits of this case.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**6.** We note that the Tennessee Court of Appeals denied Federal Express' request for a stay on condition that compliance with the TPSC's order would not prejudice judicial review of the order.